UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY KING,<br><br>   Plaintiff,<br><br>   v.<br><br>PRAXAIR DISTRIBUTION, INC., et al.,<br><br>   Defendants. | Case No. 3:20-cv-07817-JD<br><br>**ORDER RE SUMMARY JUDGMENT** |

Pro se plaintiff Troy King is an African-American man who worked as a night-shift shuttle driver and loader for defendant Praxair Distribution, Inc. (Praxair), at its plant in Pittsburg, California. King sued Praxair and Dwight Whaley, a plant manager, in Contra Costa Superior Court on a variety of California state discrimination and retaliation claims related to the termination of his employment. Dkt. No. 1-1. Praxair removed the case to this Court on the basis of diversity jurisdiction. Dkt. No. 1. The Court dismissed the original complaint with leave to amend. Dkt. No. 34.

King filed a first amended complaint with claims for race discrimination, hostile work environment, retaliation, failure to investigate and prevent discrimination and harassment, wrongful termination, and constructive discharge, all brought under 42 U.S.C. § 1981; and a claim for whistleblower retaliation. Dkt. No. 47. The Court initially dismissed portions of the Section 1981 claim, and then restored it in its entirety. *See* Dkt. No. 83. A retaliation claim under Section 1102.5 of the California Labor Code was dismissed.

Praxair has requested summary judgment on all theories underlying King's Section 1981 claim. Dkt. No. 86.[1] Viewing the record in a light most favorable to King, and even assuming

---

[1] King requested additional time to file his opposition, Dkt. No. 87, and filed his opposition two days late. *See* Dkt. Nos. 83, 88. In light of King's pro se status, the Court accepts the late filing.

1  King has made out a prima facie case, undisputed evidence establishes that Praxair had legitimate, non-discriminatory, and non-pretextual reasons for King's suspension and termination. King has not identified any genuine disputes of fact that might preclude summary judgment. Consequently, summary judgment is granted in Praxair's favor.

## STANDARDS

Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Abdul-Haqq v. Permanente Med. Grp., Inc.*, No. 3:19-CV-03727-JD, 2022 WL 7127947 (N.D. Cal. Oct. 12, 2022), *aff'd*, No. 22-16684, 2024 WL 1155449 (9th Cir. Mar. 18, 2024).

A fact is material if it could affect the outcome of the suit under the governing law. *See Anderson*, 477 U.S. at 248. To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor. *Id.* at 255. The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is then the nonmoving party's burden to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-24. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). "It is not the Court's responsibility to root through the record to establish the absence of factual disputes, or to look for evidence on the nonmoving parties' behalf." *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-cv-04217-JD, 2020 WL 4368212, at *3 (N.D. Cal. July 30, 2020) (citations omitted).

**DISCUSSION**

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right" to "make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The FAC alleges six theories of liability under Section 1981: racial discrimination, hostile work environment, retaliation, failure to investigate and prevent discrimination and harassment, wrongful termination, and constructive discharge. Dkt. No. 47 ¶¶ 103-12.

Overall, King's opposition to summary judgment on the Section 1981 claims suffers from the fact that he does little more than repeat the allegations in the FAC, without evidence to rebut Praxair's declarations and other materials. Praxair criticizes King for borrowing rather liberally from a brief filed by another party in a different case. *See* Dkt. No. 90 at 6. Whether true or not, it is irrelevant to evaluating summary judgment with respect to this pro se plaintiff.

## I.  RACIAL DISCRIMINATION AND RETALIATION

The *McDonnell Douglas* burden shifting framework applies to racial discrimination and retaliation claims under 42 U.S.C. § 1981. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). Under the framework, an employee challenging an adverse employment action bears the initial burden of establishing a prima facie case through either direct or circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Young v. Peralta Commty. Coll. Dist.*, No. 14-CV-05351-JD, 2017 WL 2462171, at *3 (N.D. Cal. June 7, 2017). If the employee demonstrates a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Young*, 2017 WL 2462171, at *3. If the employer does so, the burden shifts back to the employee to prove that the reason was pretextual. *Id.*; *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

King falls short of establishing a prima facie case for racial discrimination because he did not provide evidence that Praxair's actions had anything to do with race. The FAC itself attributes verbal and written warnings to his involvement in unionization efforts, not race. Dkt. No. 86-1, Ex. A (King Dep.), 121:25-122:17. King makes several general statements to the effect that

Praxair was generally "demeaning and unbearably retaliatory," Dkt. No. 47 ¶ 55, and that he was "retaliated" against, *id.* ¶¶ 85, 87, but did not tether these comments to race. To support his allegation that the workplace was "permeated with severe, racially hostile conduct," King identified just two instances involving racially derogatory language. Dkt. No. 88 at 8. To be sure, the language ostensibly used would, by any measure, be offensive and demeaning, but King did not link the incidents to an adverse action by Praxair. The best King offers is the allegation that similarly situated employees were not disciplined for leaving their trucks idling and unattended. Dkt. No. 47 ¶ 59. But King acknowledged in deposition testimony that he had no firsthand knowledge of whether other employees were disciplined. Dkt. No. 86-1, King Dep., 146:22-147:1, 148:8-149:24. This does not advance his case. *See Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691-93 (9th Cir. 2017). In the absence of direct evidence or concrete facts indicating disparate treatment, "[a]ny inference" that Praxair's adverse actions were motived by "race animus would be pure speculation." *Foss v. Thompson*, 242 F.3d 1131, 1134 (9th Cir. 2001); *see also Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) ("purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars," do not establish a prima facie claim under *McDonnell Douglas*) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988)).

Even if King had established a prima facie case of racial discrimination, which is not the case, Praxair has demonstrated legitimate, nondiscriminatory reasons for its actions. For example, Praxair asked King to start work earlier to ensure he could communicate with his manager on a consistent basis. Dkt. No. 86-2 ¶ 4. Praxair gave King verbal and written warnings for failing to secure his truck, which transported hazardous materials, because King had actually failed to secure his truck in violation of company policy. Dkt. No. 86-3 ¶ 10; Dkt. No. 86-4 ¶ 4.

King says he was suspended from work in October 2017, and terminated in full in November 2017, because he "objected to the racist harassment" at Praxair. *Id.* ¶ 95. But Praxair has presented evidence that the suspension and termination were triggered by multiple violations of a companywide attendance policy. Praxair instituted a new attendance policy, applicable to employees at all of its California facilities, in June 2017. Dkt. No. 86-3 ¶ 22. King violated this

policy when he "consistently arriv[ed] at least 45 minutes after his shift start time every day, and sometimes even later." Dkt. No. 86-4 ¶ 5; *see also* Dkt. No. 86-3 ¶ 22, Dkt. No. 86-4 ¶¶ 6-9. Praxair issued written warnings to King about the policy violations. Dkt. No. 86-3 ¶ 22. After several warnings, including a warning about possible termination, King arrived more than 2 hours late for a shift. Dkt. No. 86-4 ¶ 9.

King does not dispute these facts. He says that he was promised a flexible start time when hired by Praxair, Dkt. No. 88 at 15, but did not proffer evidence of this ostensible arrangement. To the contrary, the record indicates that King acknowledged in a letter to Whaley that he was hired with a "scheduled start time" of "8pm." Dkt. No. 86-3, Ex. 6. Consequently, for King's suspension and termination -- the cornerstones of his Section 1981 claim, and the sole adverse employment actions he expressly claims were based on race -- Praxair has established a valid, nondiscriminatory justification, namely frequent violations of company policy. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1118 (9th Cir. 2011) ("multiple violations of company policy could constitute a legitimate reason for terminating her employment.").

King did not rebut, or respond to, Praxair's showing of nondiscriminatory reasons. He did not proffer any evidence that might "raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004)). Consequently, summary judgment is granted to Praxair on the employment discrimination claim.

So too for the retaliation claim. Section 1981 prohibits "racial discrimination in taking retaliatory action." *Surrell*, 518 F.3d at 1107 (quoting *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003)); *see also CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (Section 1981 encompasses retaliation claims). To establish a prima facie case of retaliation, King must prove "(1) [h]e engaged in a protected activity; (2) [h]e suffered an adverse employment action; and (3) there was a causal connection between the two." *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001).

1    King is not starting from a position of strength in establishing a prima facie case. The

2 Court dismissed King's retaliation claim under Labor Code Section 1102.5 because the FAC did

3 not allege that King was engaged in protected conduct, and because reporting "conduct to the

4 effect that other employees used derogatory terms and acted unethically toward King" involved

5 "internal personnel matters" and was not a source of protected activity. Dkt. No. 59 at 3; *see also*

6 *Manatt*, 339 F.3d at 800 (retaliation under Section 1981 requires same elements as a Section

7 1102.5 claim). King does not proffer any new facts on summary judgment that might demonstrate

8 protected conduct, and simply repeats the same allegations and cites to the same exhibits already

9 presented in his complaint. *See, e.g.*, Dkt. No. 88 ¶¶ 60, 63.

10   That is enough to foreclose the retaliation claim. It bears mention that the same evidence

11 adduced by Praxair of legitimate and non-discriminatory reasons for terminating King also vitiates

12 a retaliation theory. Consequently, summary judgment is granted to Praxair on the retaliation

13 claim.

## II. HOSTILE WORK ENVIRONMENT

15   To recover for a hostile work environment under Section 1981, a plaintiff must establish

16 that "(1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was

17 unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his

18 employment and create an abusive work environment." *Johnson v. Riverside Healthcare Sys., LP*,

19 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting *Manatt*, 339 F.3d at 797) (cleaned up). Employers

20 are liable for harassing conduct perpetrated or condoned by a supervisor. *Westendorf v. W. Coast*

21 *Contractors of Nevada, Inc.*, 712 F.3d 417, 421 (9th Cir. 2013).

22   King describes a cluster of incidents said to prove a hostile work environment. In

23 September 2017, he received a "racist letter in his box," Dkt. No. 47 ¶ 89, which called him "the

24 N-Word" and included a "homophobic gesture," Dkt. No. 88 ¶ 32. He also says a coworker told

25 him that other Praxair employees had previously made racist comments or drawings, Dkt. No. 47

26 ¶ 99, and two other coworkers described a "racial divide" within Praxair, *id.* ¶¶ 39, 41.

27   Even so, King's deposition testimony painted a different picture. King stated that, other

28 than the letter, he had not personally experienced any incidents of hostility or harassment:

6

>Q: My question was specifically other than the note in your box and someone else telling you that someone else was using derogatory terms in Spanish, any other specific derogatory terms that were directed to you that you heard?
>A: That I heard, personally, with my own ears?
>Q: Yeah.
>A: Oh, no.

Dkt. No. 86-1, 161:4-11.

A letter and a co-worker's comments are not enough to demonstrate a hostile work environment. Viewing the evidence in a light most favorable to King, these few incidents, even though offensive and inappropriate, do not establish that the Praxair workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (cleaned up); *see also Surrell*, 518 F.3d at 1109 (Court looks at "all the circumstances, including the frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's work performance."). This is not a case where abuse and ridicule were experienced on a daily basis over a significant period of time. *See Dominguez-Curry v. Nevada Transportation Dept.*, 424 F.3d 1027, 1035 (9th Cir. 2005). King also does not argue that Whaley, King's supervisor, perpetrated or condoned racist workplace harassment of King. Whaley himself is an African-American man. Dkt. No. 86-3 ¶ 8. Summary judgment is granted to Praxair on this claim.

### III.    REMAINING THEORIES

Summary judgment is granted to Praxair on the wrongful termination, constructive discharge, and failure to prevent discrimination theories. Although the FAC grouped all of the Section 1981 theories in a single count, King attempted to present each theory separately. King did not discuss wrongful termination, constructive discharge, or the failure to prevent theories in opposition to summary judgment. *See* Dkt. No. 88 (discussing only the racial discrimination, retaliation, and hostile work environment theories).

To the extent the wrongful termination and constructive discharge claims are alleged on a stand-alone basis, they are entirely duplicative of the Section 1981 discrimination claim. Consequently, they are dismissed on that basis, and as abandoned by King. *See M.M. v. Lafayette*

1   *School Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) (district court has "broad discretion to control
2   its own docket, and that includes the power to dismiss duplicative claims.").
3   As a closing note, King did not provide any authority for the proposition that an
4   employer's "failure to investigate and prevent discrimination and harassment" can give rise to a
5   Section 1981 claim. The Court need not take up the question because King did not, in the first
6   instance, demonstrate workplace discrimination or harassment, and so cannot maintain a
7   derivative claim based on a "failure to prevent" theory. *See Trujillo v. N. Cnty. Transit Dist.*, 63
8   Cal. App. 4th 280, 289 (1998) (barring recovery, under FEHA, for failure to prevent, when "no
9   such discrimination or harassment actually occurred"). Consequently, Praxair is entitled to
10  summary judgment with respect to a "failure to prevent" theory.

**CONCLUSION**

Summary judgment is granted to Praxair on all of the claims against it. It is dismissed as a defendant.

**IT IS SO ORDERED.**

Dated: April 16, 2024

JAMES DONATO
United States District Judge